IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEIGAFOALII TAFUE WILLIAMS, fka, LEIGAFOALII TAFUE KOEHNEN, <br><br>        Plaintiff, <br><br>   vs. <br><br>DAWN RICKARD; HOME 123 CORPORATION, A California corporation, its successors and assigns; ELECTRONIC REGISTRATION SYSTEMS, a Delaware corporation; DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Morgan Stanley ABS Capital I Inc.; MSAC 2007-NC1, a New York corporation; REAL TIME RESOLUTIONS, INC.; and DOES 1-30, <br><br>        Defendants. | CIVIL NO. 09-00535 SOM/KSC <br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 62); ORDER DENYING JOINDER (DOCKET NO. 65) |

DENYING IN PART MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 62);
ORDER DENYING JOINDER (DOCKET NO. 65)

I.        INTRODUCTION.

      Plaintiff Leigafoalii Tafue Williams complains about mortgage loans obtained in August 2006. Williams says that, although she intended only to add a $70,000 second mortgage loan on top of her existing $157,500 first mortgage loan, she ended up with both a refinanced $280,000 first mortgage loan and a $70,000 second mortgage loan. In a lengthy First Amended Complaint, Williams sues her mortgage broker (Dawn Rickard), the first mortgage company from which she obtained the 2006 loan (Home 123

Corporation), the second-mortgage company from which she obtained the 2006 loan (Mortgage Electronic Registration Systems), the mortgage company to which the first mortgage and related note were assigned (Deutsche Bank National Trust Company, Trustee for Morgan Stanley ABS Capital I Inc. Trust 2007-NC1 Mortgage Pass-Through Certificates, Series 2007-NC1), and the mortgage company to which the second mortgage and related note were assigned (Real Time Resolutions, Inc.).

Before the court is Deutsche Bank's motion for summary judgment on the Truth in Lending Act and state-law unfair and deceptive practices claims asserted against it. See Docket No. 62. Real Time has joined in that motion, arguing that it is entitled to the same relief as Deutsche Bank. See Docket No. 65. The court grants Deutsche Bank's motion with respect to the Truth in Lending Act claim, as Williams untimely sought rescission of the $280,000 loan now held by Deutsche Bank. The court denies Deutsche Bank's motion with respect to the unfair and deceptive practices claim and denies Real Time's request for relief.

II.     BACKGROUND.

It is undisputed that Williams lives in a home in Hilo, Hawaii, and that Williams had a 2005 mortgage on that property with Defendant Home 123 Corporation, securing a $157,500 note.

Williams says that, in June or July 2006, she telephoned Home 123 to discuss a second mortgage loan of $70,000.

2

<u>See</u> Declaration of Leigafoalii Tafue Williams ¶ 4, Jan. 6, 2011, ECF No. 70-1. Williams says that she wanted only a second mortgage, not a refinancing of her first mortgage. <u>Id.</u> ¶ 6.

Williams was referred to Dawn Rickard, who worked for Home 123. <u>Id.</u> ¶ 5. Williams says that she told Rickard that she wanted a second mortgage and that she did not want to refinance her existing mortgage, which had an interest rate of 6.875%. <u>Id.</u> ¶ 6. Williams says that, after not hearing from Rickard or Home 123 for a while, she called Rickard in either late July or early August. <u>Id.</u> ¶ 7. Williams says that she was told that Home 123 would be sending loan papers to her. <u>Id.</u>

Williams says that she did not hear from Home 123 until August 17, 2006, when she received a telephone call from Rickard instructing her to meet with an escrow officer to sign the loan papers. <u>Id.</u> ¶ 8. Williams says that she immediately drove to the escrow company and signed her loan papers in about 10 to 15 minutes. <u>Id.</u> ¶ 9. According to Williams, she thought she was signing the loan documents for the $70,000 second mortgage. <u>Id.</u> In her declaration, Williams claims that she did not have adequate time to review the loan documents, that the documents were not explained to her, and that English is not her native language. <u>Id.</u> ¶ 21. In an earlier deposition, Williams indicated that she had felt rushed because she had someone waiting for her in her car, and that no one present when she

signed the loan documents told her to hurry.  <u>See</u> Deposition of
Leigafoali`i Tafue Williams at 38, Dec. 3, 2010, ECF No. 63-6.

Deutsche Bank submitted an authenticated copy of
Williams's Uniform Residential Loan Application for the $280,000
loan in conjunction with an earlier motion.  Williams appears to
have signed that loan application on August 17, 2006, the same
day she signed other documents for the loan.  <u>See</u> Declaration of
John Cottrell ¶ 4, Feb. 5, 2010, ECF No. 19 (authenticating the
loan application and attaching it to Cottrell's declaration as
ECF No. 19-4).

Williams says that she received loan papers
demonstrating that she wanted a loan of $70,000.  Williams says
these loan documents are attached to her concise statement as
Exhibit 2.  <u>See</u> Williams Decl. ¶ 13; ECF No. 70-3.  These loan
documents were provided to Williams on or about August 8, 2006,
and include a Federal Truth-in-Lending Statement showing the
costs of her $70,000 loan and a Servicing Disclosure informing
Williams that her loan would likely be transferred to another
company.  If other loan documents were provided to Williams on
that day, they are not attached as part of Exhibit 2.  <u>See</u> ECF
No. 70-3 (attaching what appears to be only some of the loan
documents given to Williams for the $70,000 loan).

At the end of August 2006, Williams received her loan
check.  Williams says that was when she discovered that she had

4

actually refinanced the original mortgage by signing loan papers
for an allegedly unwanted new first mortgage securing a $280,000
balloon note with interest at 8.375 percent from Home 123, ECF
Nos. 70-6 and 63-2, and for a second mortgage securing a $70,000
loan from MERS, ECF No. 70-7 and 63-4. Id. ¶¶ 4, 6, 12, 13, 19-
20; See Williams Depo. at 44 ("Q: So you ended up refinancing the
first mortgage, and then getting an additional second mortgage
for $70,000; correct? A: Yes.").

In paragraph 30 of the First Amended Complaint,
Williams alleges, "Nor did Williams receive at closing two
accurate and complete requisite TILA notices of the right to
cancel as to each such purported 2006 loan." See ECF No. 27.
Williams alleges that she did not receive copies of her other
loan documents until the end of August 2006. See Id. ¶ 17.
Defendants deposed Williams with respect to these allegations.
At her deposition, Williams admitted that, on August 17, 2006,
the day she signed the loan documents, she signed her name on the
Notice of Right to Cancel, acknowledging receipt of two copies of
that document. See Williams Depo. at 44; ECF No. 63-7 (copy of
Notice of Right to Cancel). The Notice of Right to Cancel that
Williams signed informed her that she had three business days to
cancel the loan transaction with Home 123. See ECF No. 63-7.
Williams says she was also orally told of the three-day
rescission period. See Williams Depo. at 45.

Williams testified that she signed other loan documents on August 17, 2006.  See id. at 32 ($280,000 loan application), at 42 (both mortgages), at 44 (a Notice of Right to Cancel), at 49 (a mortgage loan closing affidavit), at 50-51 (a Federal Truth-in-Lending Disclosure Statement, ECF No. 63-8), at 53-54 (a Good Faith Estimate for the $280,000 loan, ECF No. 63-9), at 56 (Addendum to Escrow Instructions, ECF No. 63-10), at 57 (closing instructions, ECF No. 63-11), at 57-58 (Information for Government Monitoring Purposes, ECF No. 63-12), at 58-59 (Concurrent Funding Agreement in which Williams acknowledges applying for first and second mortgage loans, ECF No. 63-13), at 59-60 (Notice to Borrower Not in Special Flood Hazard Area, ECF No. 63-14), at 60-61 (Servicing Disclosure, ECF No. 63-15), at 61 (Error and Omissions/Compliance Agreement, ECF No. 63-16), at 62 (Borrower's Certification and Authorization, ECF No. 63-17), at 64 (Choice of Insurance Notice, ECF No. 63-18), at 64 (Hazard Insurance Authorization and Requirements, ECF No. 63-19), at 65 (30 Day Letter, ECF No. 63-20), at 65-66 (Equal Credit Opportunity Act; Fair Housing Act, ECF No. 63-21), at 67 (Balloon Disclosure, ECF No. 62-22), and at 67-68 (Affiliated Business Arrangement Disclosure Statement, ECF No. 63-23).

Williams testified that she took copies of the loan documents she signed on August 17, 2006, home with her that day,

but did not look at them until much later.  <u>See</u> Williams Depo. at
52.

Williams testified that, when she signed the loan
documents, she was taking Rickard's word that she was signing for
only a $70,000 loan.  <u>Id.</u> at 58, 68.

Williams did not correct her deposition testimony.
Nevertheless, in conjunction with her Opposition to the present
motion, Williams contradicts her deposition testimony by
submitting a declaration nearly parroting certain allegations
from her First Amended Complaint.  <u>See</u> Williams Decl. ¶ 24, ECF
No. 70-1 ("Nor did I receive delivered to me at closing two
accurate and complete requisite TILA notices of the right to
cancel as to each such purported 2006 loan".), ¶ 11 (indicating
that Williams did not receive copies of her loan documents until
the end of August 2006).  Williams makes no effort in her
declaration to explain the differing deposition testimony.  When
asked at the hearing to explain the difference between Williams's
deposition testimony and her declaration, Williams's counsel (who
said he had prepared her declaration) claimed that Williams had
not read the loan materials, had not looked at the materials, and
had not known what she brought home.  Williams clarified at the
hearing that she is not asserting that the Notice of Right to
Cancel was inaccurate or incomplete and that she is instead
arguing that she did not receive the document at all.

7

Williams may not contradict her deposition testimony in an attempt to create triable issues of fact. Williams testified in her deposition that she signed documents and took them home with her on August 17, 2006. Williams's declaration does not indicate that she kept all of the documents she received in one location and that she has since reviewed those materials, determining that the Notice of Right to Cancel is not among the materials. Instead, she simply contradicts her deposition testimony, saying that she did not receive copies of the loan documents until weeks later and did not receive the Notice of Right to Cancel at all. The court disregards Williams's declaration as a "sham" to the extent it states that she did not take documents home with her on August 17, 2006, and says that the documents she did take home did not include the Notice of Right to Cancel. See Leslie v. Grupo ICA, 198 F.3d 1152, 1157 (9th Cir. 1999).

Williams received a Federal Truth-in-Lending Disclosure Statement, see ECF No. 63-8, and an itemized Good Faith Estimate, see ECF No. 69-3 for her loan with Home 123. Williams signed these documents. See id.; Williams Depo. at 50-51 and 53-54. She says, however, that, at the time she received the documents, she merely signed them and did not read them. Id. at 52 and 54. Williams says that, had she read the documents, she would not have signed them. Id. at 54. Williams does not identify any

material misrepresentation in these disclosures, other than arguing that the actual loans she received were not what she had requested.  See 15 U.S.C. § 1602(u) (in relevant part, defining "material" disclosures as the annual percentage rate, finance charge, amount financed, total of payments, and payment schedule).  Williams clarified at the hearing that she had requested a single loan, but received two loans instead, which she calls "loan splitting."

Williams alleges that her first mortgage was assigned to Deutsche Bank.  See First Amended Complaint ¶ 6.  Williams alleges that her second mortgage was assigned to Real Time.  Id. ¶ 7.

On or about June 22, 2009, Williams's attorney sent a letter to the lenders indicating that Williams was rescinding the 2006 loan transaction.  See ECF No. 70-9.  It is undisputed that no Defendant accepted that rescission.

Questioned in regard to her ability to repay loan proceeds as part of any rescission, Williams indicated in her deposition that she lacked the ability to repay the principal amount of the first mortgage.  See Williams Depo. at 117-118, ECF No. 63-6.  Williams testified that she has not made mortgage payments or paid real estate taxes since mid-2008.  See id. at 128.  Williams said that the only income she and her husband earn comes from her husband's canoe repair business.  She testified

that, in a good month, his business earns $3,000, but his business goes up and down, and they sometimes go for three or four months with no income.  See id. at 17-18.  Notwithstanding that deposition testimony, Williams now claims that she is able to "get financial assistance from family and friends" that will allow her to repay what she received from lenders.  Williams Decl. ¶ 27(b), ECF No. 70-1.  Williams provides no details about this financial assistance.

III.    STANDARD.

        Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment."  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex, 477 U.S. at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.

<u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102
(9th Cir. 2000).  The burden initially falls on the moving party
to identify for the court "those portions of the materials on
file that it believes demonstrate the absence of any genuine
issue of material fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec.</u>
<u>Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing
<u>Celotex Corp.</u>, 477 U.S. at 323); <u>accord</u> <u>Miller</u>, 454 F.3d at 987.
"A fact is material if it could affect the outcome of the suit
under the governing substantive law."  <u>Miller</u>, 454 F.3d at 987.

     When the moving party fails to carry its initial burden
of production, "the nonmoving party has no obligation to produce
anything."  In such a case, the nonmoving party may defeat the
motion for summary judgment without producing anything.  <u>Nissan</u>
<u>Fire</u>, 210 F.3d at 1102-03.  On the other hand, when the moving
party meets its initial burden on a summary judgment motion, the
"burden then shifts to the nonmoving party to establish, beyond
the pleadings, that there is a genuine issue for trial."  <u>Miller</u>,
454 F.3d at 987.  This means that the nonmoving party "must do
more than simply show that there is some metaphysical doubt as to
the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>
<u>Corp.,</u> 475 U.S. 574, 586 (1986) (footnote omitted).  The
nonmoving party may not rely on the mere allegations in the
pleadings and instead "must set forth specific facts showing that
there is a genuine issue for trial."  <u>Porter v. Cal. Dep't of</u>

<u>Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005) (quoting <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).  "A genuine
dispute arises if the evidence is such that a reasonable jury
could return a verdict for the nonmoving party."  <u>California v.</u>
<u>Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred</u>
<u>Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be
enough doubt for a 'reasonable trier of fact' to find for
plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's
evidence is to be believed, and all justifiable inferences are to
be drawn in that party's favor."  <u>Miller</u>, 454 F.3d at 988
(quotations and brackets omitted).

IV.     <u>ANALYSIS.</u>

Deutsche Bank moves for summary judgment on the two
claims asserted against it in the First Amended Complaint.  <u>See</u>
Docket No. 62.  Real Time has filed a joinder in that motion,
seeking identical relief as it relates to Real Time.  <u>See</u> Docket
No. 65.

Williams initially opposes the motion by arguing that
neither Deutsche Bank nor Real Time has presented proof of being
the holder of any note or mortgage at issue here.  This argument
is without merit.  Williams's First Amended Complaint alleges
that Deutsche Bank and Real Time are the current holders of the
notes and mortgages in question.  Deutsche Bank and Real Time are

entitled to seek summary judgment on the affirmative claims asserted against them without first proving that they are the holders of the relevant notes and mortgages.

      A.   <u>Truth in Lending Act Claims.</u>

      Counts 13 and 15 seek statutory damages and rescission of the 2006 notes and mortgages based on alleged TILA violations. Although Counts 13 and 15 of the First Amended Complaint contain lengthy allegations concerning the allegedly fraudulent conduct in the procurement of the loans, Williams clarified in her Opposition that Count 13 only seeks damages for Deutsche Bank's refusal to honor her June 22, 2009, rescission request. <u>See</u> Opposition at 17, Jan. 6, 2011, ECF No. 71. The court assumes that Count 15 against Real Time is also so limited. Given Williams's abandonment of claims under 15 U.S.C. §§ 1640-41, the court need not address Deutsche Bank's arguments that it is not a "creditor" for purposes of § 1640 and has no assignee liability under § 1641.

      Deutsche Bank also argues that Williams's attempt to rescind is untimely and barred by the applicable statute of limitation. Under 15 U.S.C. § 1635(a), a borrower has a right to rescind a consumer credit transaction that provides for a security interest in any property used as the borrower's principal dwelling. The borrower has "until midnight of the third business day following consummation of the transaction or

13

the delivery of the information and rescission forms" to exercise this right.  Id.  However, when a lender fails to disclose to a borrower his or her right to rescind, or fails to provide material disclosures, the duration of the borrower's right to rescind extends for three years from the date the transaction was consummated.  12 C.F.R. § 226.23(a)(3); Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989).  Even a purely technical violation of TILA's disclosure provisions, including the failure to provide a borrower with a copy of the notice that includes the correct date the rescission period expires, extends the duration of the right to rescind for three years.  See Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 703-05 (9th Cir. 1986).

TILA defines "material disclosures" as disclosures

> of the annual percentage rate, the method of
> determining the finance charge and the
> balance upon which a finance charge will be
> imposed, the amount of the finance charge,
> the amount to be financed, the total of
> payments, the number and amount of payments,
> the due dates or periods of payments
> scheduled to repay the indebtedness, and the
> disclosures required by section 1639(a) of
> this title.

15 U.S.C. § 1602(u).  In the court's usual prehearing inclinations, the court asked Williams to come to the hearing prepared to identify "material disclosures" that were not made. Williams did not identify any "material disclosure" that was not made.  Williams argued instead that illegal "loan splitting" had occurred.  Williams contends that, because she asked for and

expected a single $70,000 loan, but received a $280,000 loan and a $70,000 loan, "loan splitting" occurred.  Williams says that, pursuant to 12 C.F.R. § 226.17(d), she should have received one comprehensive loan statement, not two.  This court is not persuaded.

In relevant part, section 226.17(d) states, "If a transaction involves more than one creditor, only one set of disclosures shall be given and the creditors shall agree among themselves which creditor must comply with the requirements that this regulation imposes on any or all of them."  12 C.F.R. § 226.17(d) (2006).  Courts have interpreted this requirement as applying when a consumer expects a loan for a certain amount, but instead receives two loans totaling that amount.  See, e.g., <u>Kane v. Equity One, Inc.</u>, 2003 WL 22939377, *2 (E.D. Pa. Nov. 21, 2003).  In other words, the section applies to "loan splitting," which involves a consumer's request for a single loan, and a lender's documentation and disclosure of two separate loans that together provide the requested loan amount.  <u>Id.</u>

Williams has not explained why the present situation can be said to involve "loan splitting."  This is not a case in which Williams expected to receive a single $70,000 loan, but received two loans totaling $70,000.  <u>See</u> Elizabeth Renuart and Kathleen Keest, <u>Truth in Lending</u> § 4.9.2.2 (Nat'l Consumer Law Center, 6th ed. 2007) (describing loan splitting).  Instead,

according to Williams, she received her requested $70,000 loan,
as well as an unwanted $280,000 loan that refinanced her then-
existing first mortgage loan. Section 226.17(d) is inapplicable,
because Williams had no expectation that she would receive a
single loan of $350,000, and the $70,000 loan was never broken
into two separate parts.

Given the court's determination that Williams's
declaration is a "sham" to the extent it contradicts her earlier
deposition testimony that she received two copies of her Notice
of Right to Cancel, and given Williams's failure to identify any
"material disclosure" that was not made, Williams demonstrates no
reason that the rescission period was extended from three days to
three years. Accordingly, Deutsche Bank did not violate TILA
when it refused to honor Williams's June 22, 2009, rescission
letter. Williams's right to rescind the $280,000 loan now held
by Deutsche Bank had long since expired. See 15 U.S.C.
§ 1635(a).

Deutsche Bank additionally argues that summary judgment
should be granted on the TILA claim because Williams cannot repay
the loan proceeds. The court agrees that it could condition
Deutsche Bank's obligation to release its security interest for
the loan to Williams on Williams's tender to Deutsche Bank of the
amount owed or property equivalent to the debt. TILA requires a
creditor to return any money or property to the borrower and

terminate the security interest within twenty days of receiving a notice of rescission from a borrower. See 15 U.S.C. § 1635(b). Once that happens, the borrower typically must tender the loan or the property. Id. However, a court has discretion to delay a lender's actions until the borrower tenders the amount owed or provides an equivalent property to the lender. Whether a decree of rescission should be conditional depends on "the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act." Yamamoto v. Bank of New York, 329 F.3d 1167, 1171 (9th Cir. 2003) (citations omitted).

In Yamamoto, the Ninth Circuit said that, if a borrower cannot comply with his or her rescission obligation, the court may deny rescission. Id. at 1173. The next year, in 2004, Official Staff Commentary to 12 C.F.R. § 226.23 was added to clarify that, when a court modifies the rescission procedures, the consumer's right to rescind and to have the loan amount adjusted are not affected. See Elizabeth Renuart and Kathleen Keest, Truth in Lending § 6.7.2.3 (Nat'l Consumer Law Center, 6th ed. 2007); Official Staff Commentary on Regulation Z for § 226.23(d)(4).[1] Because the applicable limitation period for

---

[1]This Official Staff Commentary lends additional support for the proposition that a claimant seeking rescission is not required to plead the ability to tender back the loan principal

rescinding the $280,000 loan has expired, the court need not decide the thorny issue of whether summary judgment should be granted to Deutsche Bank based on what appears to be Williams's inability to tender back the loan proceeds.

Based on the foregoing, summary judgment is granted in favor of Deutsche Bank on the TILA claim asserted in Count 13 of the First Amended Complaint. The court notes that Real Time's joinder seeks the same relief for itself with respect to the TILA claim asserted in Count 15 of the First Amended Complaint. This court declines to grant Real Time summary judgment on that claim at this time, as Real Time has not submitted any evidence indicating that it provided Williams with two copies of the Notice of Right to Cancel the $70,000 loan. Accordingly, the court cannot tell whether the limitation period should have been extended to three years with respect to the $70,000 loan.

B.    Unfair and Deceptive Act Claims.

Counts 12 and 14 are asserted against Deutsche Bank and Real Time, respectively, for violations of Hawaii's Unfair and Deceptive Practices Act by Rickard and Home 123. Section 480-2 of the Hawaii Revised Statutes prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

---

to the lender. This pleading issue is the source of continuing discussion by courts.

Deutsche Bank argues that it cannot be held liable for damages under chapter 480 because it committed no unfair or deceptive act. However, Counts 12 and 14 of the First Amended Complaint do not seek civil penalties from Deutsche Bank or Real Time and instead seek only rescission of the 2006 notes and mortgages. Williams's Opposition indicates that her rescission claims are based on section 480-12 of the Hawaii Revised Statutes, which states: "Any contract or agreement in violation of this chapter is void and is not enforceable at law or in equity."

In its motion for summary judgment, Deutsche Bank also argues that Williams's chapter 480 claims are preempted by TILA. To the extent Williams's chapter 480 claims are premised on TILA violations, the court agrees. See Kajitani v. Downey Sav. & Loan Ass'n, 647 F. Supp. 2d 1208, 1219-20 (D. Haw. 2008). However, Williams clarified at the hearing that her chapter 480 claims are not based on TILA, but instead on the alleged "bait and switch"-- she had asked for a $70,000 second mortgage loan but received a $280,000 first mortgage loan and a $70,000 second mortgage loan. Because Williams's chapter 480 claims are not premised on TILA violations, but instead on other conduct, there is no TILA preemption, and summary judgment is denied.

Deutsche Bank also argues that it is entitled to summary judgment on the chapter 480 claims because Williams

cannot tender the loan proceeds back to it. Given Williams's assertion that she now has the ability to tender, the court denies the motion without prejudice. However, in aid of ultimately resolving Williams's chapter 480 claims, and especially in light of Real Time's representation at the hearing that it is willing to rescind its loan, the court orders Williams, no later than February 28, 2011, to file with this court her own detailed declaration indicting exactly how she proposes to unwind the transactions so that she will not be unjustly enriched. See Davis v. Wholesale Motors, Inc., 86 Haw. 405, 421, 949 F.2d 1026, 1042 (1998).

Because Williams appears to be saying that she now has the ability to tender the loan proceeds back to the lenders, Williams's declaration should describe with particularity how, when, and from whom Williams will receive the funds to do so. Williams may not generally refer to family or friends who are willing to help her, but must instead state the details of the help. If friends are willing to loan her $350,000, for example, Williams must provide details about the loan. That is, she should inform the court who is willing to loan her money, when the loan will occur, and how much money will be loaned. Only a sufficient level of detail will indicate to the court and the lenders that Williams has the ability to prevent her own unjust enrichment.

The court grants Deutsche Bank and Real Time leave to depose Williams for a second time on the matters she states in her declaration, as this discovery was not available to the lenders when they earlier deposed her. Deutsche Bank and/or Real Time may request reasonable extensions of the discovery cut-off (March 18, 2011), the dispositive motions deadline (December 15, 2010), and/or the trial date (May 17, 2011) based on matters raised by Williams's upcoming declaration. The parties should contact the Magistrate Judge assigned to this case for modification of Amended Rule 16 Scheduling Order.

V.     CONCLUSION.

For the foregoing reasons, the court grants summary judgment in favor of Deutsche Bank on the TILA claim asserted in Count 13 of the First Amended Complaint. In all other respects, Deutsche Bank's motion for summary judgment and Real Time's joinder are denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 9, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Williams v. Rickard, Civ. No. 09-00535 SOM/KSC; ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 62); ORDER DENYING JOINDER (DOCKET NO. 65)

21