IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEIGAFOALII TAFUE WILLIAMS, fka, LEIGAFOALII TAFUE KOEHNEN, <br><br> Plaintiff, <br><br> vs. <br><br> DAWN RICKARD; HOME 123 CORPORATION, A California corporation, its successors and assigns; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, a Delaware corporation; DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Morgan Stanley ABS Capital I Inc.; MSAC 2007-NC1, a New York corporation; REAL TIME RESOLUTIONS, INC.; and DOES 1-30, <br><br> Defendants. | CIVIL NO. 09-00535 SOM/KSC <br><br> ORDER GRANTING DEUTSCHE BANK NATIONAL TRUST COMPANY'S MOTION FOR SUMMARY JUDGMENT ON COUNT 12 (ECF NO. 90); ORDER GRANTING REAL TIME RESOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT ON COUNTS 14 AND 15 (ECF NO. 96); ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 93); ORDER REMANDING STATE LAW CLAIMS AGAINST DAWN RICKARD AND HOME 123 CORPORATION TO STATE COURT |

ORDER GRANTING DEUTSCHE BANK NATIONAL TRUST COMPANY'S MOTION FOR
SUMMARY JUDGMENT ON COUNT 12 (ECF NO. 90);
ORDER GRANTING REAL TIME RESOLUTIONS, INC.'S MOTION FOR SUMMARY
JUDGMENT ON COUNTS 14 AND 15 (ECF NO. 96);
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(ECF NO. 93); ORDER REMANDING STATE LAW CLAIMS AGAINST DAWN
RICKARD AND HOME 123 CORPORATION TO STATE COURT

I.      INTRODUCTION.

        Plaintiff Leigafoalii Tafue Williams entered into

mortgage loan transactions in August 2006.  Williams says that

she requested only a $70,000 second mortgage loan from Defendant

Home 123 Corporation.  She says that, to obtain the loan, she

worked with Defendant Dawn Rickard, a mortgage broker with Home

123. Williams accuses Home 123 and Rickard of committing a "bait and switch" that resulted in her having a refinanced $280,000 first mortgage loan and a $70,000 second mortgage loan.

In the lengthy First Amended Complaint, Williams sues her mortgage broker (Rickard), her original first-mortgage company (Home 123), her original second-mortgage company (Mortgage Electronic Registration Systems), the mortgage company that is the assignee of the first mortgage and related note (Deutsche Bank National Trust Company, Trustee for Morgan Stanley ABS Capital I Inc. Trust 2007-NC1 Mortgage Pass-Through Certificates, Series 2007-NC1), and the mortgage servicing company that is the assignee of the right to enforce the second mortgage and related note (Real Time Resolutions, Inc.).

In relevant part, the First Amended Complaint seeks rescission and damages under the Truth in Lending Act ("TILA") against Deutsche Bank and Real Time. See First Amended Complaint, Counts 13 and 15, Feb. 16, 2010, ECF No. 27. The First Amended Complaint seeks rescission but not damages under chapter 480 of the Hawaii Revised Statutes, which, in relevant part, prohibits unfair and deceptive acts in consumer transactions. See id., Counts 12 and 14. The First Amended Complaint also seeks a "Title Accounting" from MERS. See id., Count 16.

On June 30, 2010, the court dismissed the TILA money damage claims asserted in Counts 13 and 15 to the extent the claims were based on alleged disclosure violations, ruling those claims were time-barred.  See Order Granting in Part and Denying in Part Motion to Dismiss First Amended Complaint (Docket No. 30), June 30, 2011, ECF No. 44.

On February 9, 2011, the court granted summary judgment in favor of Deutsche Bank on the remaining TILA claim for rescission and rescission-related damages asserted in Count 13, ruling that Williams had untimely sought rescission of the loan. See Order Granting in Part and Denying in Part Motion for Summary Judgment (Docket No. 62), Feb. 9. 2011, ECF No. 78.  Because Deutsche Bank had established that it had provided Williams with the requisite Notice of Right to Cancel and Williams had failed to identify any "material disclosure" that was not made, the court, concluding that Williams demonstrated no reason to extend the TILA limitation period from three days to three years, ruled that the remaining TILA claim against Deutsche Bank was time-barred.  Id.  Because Real Time had not established that it had provided Williams with the requisite Notice of Right to Cancel or demonstrated that all "material disclosures" were made, the court declined to grant Real Time's "joinder" in the motion, as the court could not tell on the record before the court at that time

whether the TILA limitation period for Williams's second mortgage was extended from three days to three years.  Id.

The February 9, 2011, order denied Deutsche Bank's motion for summary judgment on the chapter 480 claim asserted in Count 12 and denied Real Time's joinder therein seeking summary judgment on Count 14.  Williams indicated to the court that those unfair and deceptive act claims only sought the voiding of the loans under section 480-12 of the Hawaii Revised Statutes.  Accordingly, the court so limited those claims.  To the extent Williams asserted chapter 480 claims premised on TILA violations, the court ruled that those claims were preempted.  However, to the extent the chapter 480 claims were premised on an alleged "bait and switch," the court denied summary judgment.

Before the court are 1) Real Time's motion for summary judgment on the TILA Claim asserted in Count 15, 2) Deutsche Bank's and Real Time's motions for summary judgment on the chapter 480 claims asserted in Counts 12 and 14; and 3) Williams's motion for summary judgment seeking a determination that, in the course of working for Home 123, Rickard engaged in a "bait and switch."  At the hearing, Williams dismissed the "Title Accounting" claim asserted in Count 16 of the First Amended Complaint, making it unnecessary for this court to rule on the motion for summary judgment filed by MERS.  The court grants the motions by Deutsche Bank and Real Time, and denies the motion by

Williams.  Additionally, given Williams's concession at the
hearing that her TILA claims against Rickard and Home 123 should
be treated the same as the TILA claims against Deutsche Bank and
Real Time, the court grants summary judgment in favor of Rickard
and Home 123 on all of the TILA claims asserted against them.
The only claims remaining in this action are state law claims
asserted against Rickard and Home 123, which the court declines
to exercise supplemental jurisdiction over.  Those claims are
remanded to state court.

II.      SUMMARY JUDGMENT STANDARD.

         The standard governing motions for summary judgment was
set forth in this court's Order Granting in Part and Denying in
Part Motion for Summary Judgment (Docket No. 62), Feb. 9. 2011,
ECF No. 78.  That standard is incorporated herein by reference.

III.     BACKGROUND.

         The factual background for this case was set forth in
this court's Order Granting in Part and Denying in Part Motion
for Summary Judgment (Docket No. 62), Feb. 9. 2011, ECF No. 78.
That factual background is incorporated herein by reference and
supplemented as set forth below.

         With respect to the approximately $70,000 second
mortgage loan, Williams acknowledged receiving two copies of the
notice of right to cancel the loan on August 17, 2006.  See
Notice of Right to Cancel, ECF No. 99-4.  She also received a

Truth in Lending Disclosure Statement for that loan, and a Good-Faith Estimate-Itemization for that loan. <u>See</u> ECF Nos. 99-5 and 99-6. Williams does not at this point deny that she received these documents. Nor does Williams point to any "material disclosure" that was not made or that was inaccurate. <u>See</u> Declaration of Leigafoalii Tafue Williams, Apr. 23, 2011, ECF No. 118-1.

On March 11, 2010, the assignment of Williams's second mortgage from MERS to Real Time was recorded in the State of Hawaii, Bureau of Conveyances as Document Number 2010-033392. <u>See</u> ECF No. 99-7.

In relevant part, Deutsche Bank and Real Time previously sought summary judgment on Williams's state law chapter 480 claims, arguing that they were entitled to summary judgment because, given Williams's deposition testimony regarding her serious financial difficulties, Williams could not unwind the loan transactions. Williams testified that she lacks the ability to repay the principal amount of the first mortgage. <u>See</u> Williams Depo. at 117-118, Dec. 3, 2010, ECF No. 98-4. Williams testified that she has not paid money due on the mortgage or real estate taxes since mid-2008. <u>See</u> <u>id.</u> at 128. According to Williams, the only income she and her husband earn comes from her husband's canoe repair business. She testified that, on a good month, his business earns $3,000, but that his business is up-

and-down and that sometimes they go for three or four months with
no income.  See id. at 17-18.  Williams testified in her
deposition that, if the lenders were willing to modify the loan,
she could afford to pay $1,000 per month.  Id. at 115-16.  When
pressed as to how she would afford to pay $1,000 per month,
Williams said that she did not know, but that she would find a
way.  Id. at 116.  Williams also testified that she owes $250,000
for medical debts, in addition to what is owed on the first and
second mortgage loans.  See id. at 75-76.

     In opposition to Deutsche Bank's motion and Real Time's
joinder, Williams claimed an ability to tender the loan proceeds
back to the banks.  The court ruled that this assertion created
an issue of fact based on the record before the court.  However,
faced with only Williams's bald assertion that she could pay back
the loan proceeds, the court ordered Williams to submit a
declaration detailing how she proposed to unwind the loans:

          Deutsche Bank also argues that it is
          entitled to summary judgment on the chapter
          480 claims because Williams cannot tender the
          loan proceeds back to it.  Given Williams's
          assertion that she now has the ability to
          tender, the court denies the motion without
          prejudice.  However, in aid of ultimately
          resolving Williams's chapter 480 claims, and
          especially in light of Real Time's
          representation at the hearing that it is
          willing to rescind its loan, the court orders
          Williams, no later than February 28, 2011, to
          file with this court her own detailed
          declaration indicting exactly how she
          proposes to unwind the transactions so that
          she will not be unjustly enriched.  See Davis

7

<u>v. Wholesale Motors, Inc.</u>, 86 Haw. 405, 421, 949 [P].2d 1026, 1042 (1998).

> Because Williams appears to be saying that she now has the ability to tender the loan proceeds back to the lenders, Williams's declaration should describe with particularity how, when and from whom Williams will receive the funds to do so. Williams may not generally refer to family or friends who are willing to help her, but must instead state the details of the help. If friends are willing to loan her $350,000, for example, Williams must provide details about the loan. That is, she should inform the court who is willing to loan her money, when the loan will occur, and how much money will be loaned. Only a sufficient level of detail will indicate to the court and the lenders that Williams has the ability to prevent her own unjust enrichment.

<u>See</u> Order Granting in Part and Denying in Part Motion for Summary Judgment (Docket No. 62 ) at 19-20, ECF No. 78.

On February 28, 2011, Williams submitted her declaration, indicating that, although she had previously thought that her former father-in-law would loan her money, he had decided not to do so. <u>See</u> Declaration of Leigafoalii Tafue Williams ¶ 8, Feb. 28, 2011, ECF No. 82-1. With no money coming in from family or friends to pay back the loan proceeds, Williams has changed her proposal. Williams now says that she and her husband are willing to unwind the transaction with Deutsche Bank by entering into a new loan with it (essentially modifying the loan) with terms providing for Williams and her husband to pay "up to $1,000 per month" for a loan with an interest rate of 2%

to 3%.  Williams provides no detail in that declaration of how
she and her husband will be able to afford the proposed monthly
payment.  The court notes that the proposal is for "up to" $1,000
per month, not for a guaranteed monthly amount.  Nor does
Williams provide any detail as to how she plans to unwind the
second mortgage loan.  Williams believes it would be fair to set
the new loan amounts at the amounts Deutsche Bank and Real Time
paid for the loans.  Id. ¶¶ 9-10.

     In the best case scenario for Williams, if the court
were to credit all money that she ever paid in connection with
the loans against the principal amount of the loan, Williams
would owe $226,714.06 on the first mortgage loan and $47,535.33
on the second mortgage loan.  See ECF Nos. 139 ¶ 10 and ECF No.
140 ¶ 6.  Assuming that the Williamses entered into a modified
loan with no balloon payment at a fixed interest rate of 2% for
that total amount ($274,249.39) for a period of 30 years, the
monthly payment for the loan would be $1,013.68.

     Although Deutsche Bank and Real Time dispute that a
"bait and switch" occurred, their current motions for summary
judgment argue that, even assuming a "bait and switch" occurred,
they are entitled to summary judgment on Williams's rescission
claims under chapter 480 because Williams is unable to unwind the
loans.  Deutsche Bank and Real Time argue that Williams's

declaration did not sufficiently detail how she would unwind the loans.

In opposition to the motions, Williams submits an April 23, 2011, declaration of her husband, Papu Williams.  See ECF No. 116-16.  That declaration states that, beginning in "late March" 2011, his business has been "starting to see a modest increase." Id. ¶ 5.  Based entirely on the canoe repair business's earnings in late March and early April 2011, the Williamses surmise that they can earn $3,000 to $4,000 per month, see id., Ex. A, although Williams had previously testified that, in a good month, the business earns $3,000, but sometimes there is no business income for three or four months.  The Williamses propose the following budget in connection with their proposal for a modified loan:

| | |
|---|---|
| Automobile Loan | $450.00 |
| Insurance (auto, health) | 235.00 |
| Groceries, household | 400.00 |
| Car Expenses (gas Maintenance) | 200.00 |
| Credit Card 1 | 50.00 |
| Credit Card 2 | 50.00 |
| Doctors (present treatment) | 200.00 |
| Cable/Internet | 95.00 |
| Electricity | 300.00 |
| Water | 100.00 |
| Telephone | 50.00 |
| | $2,130.00 |
| | |
| Business Expenses: | |
| Tapes (masking, packing), wax gloves, paint brushes, paint, sandpaper, etc. | $800.00 |
| | $2,930.00 |

Papu Williams Decl., Ex. A.

Even assuming that the business will be able to consistently earn $4,000 per month, which is not at all clear, the Williamses will be unable to pay all of their bills as proposed in the budget.  If the Williamses pay a $1,000 per month loan payment, their monthly expenses according to their own proposed budget would be $3,930.  However, the proposed budget does not indicate whether the upper range of $4,000 per month in income is a "gross" amount or a "net" amount after taxes.  If the $4,000 per month figure does not already include the payment of income or business taxes, the Williamses' income certainly would be insufficient to cover both their expenses and their mortgage. Even if the $4,000 per month figure was a post-tax figure, the budget does not explain how the $250,000 in medical debts will be repaid and does not take into account mandatory real property taxes owed (approximately $868 per year or $72 per month, <u>see</u> ECF No. 139-4) or necessary hazard insurance payments (approximately $2,325 per year or $194 per month, <u>see</u> ECF No. 139-5).  When real property taxes and hazard insurance are taken into account, the Williamses fall nearly $200 per month short, even assuming a monthly post-tax income of $4,000.00.

IV.     ANALYSIS.

        A.     Williams May Not Relitigate Her Argument that
               Deutsche Bank and Real Time Must Prove that They
               Are the Holders of the Notes and Mortgages Before
               They May Defend Themselves Against Williams's
               Affirmative Claims Asserted in the First Amended
               Complaint.

        To the extent Williams opposes the motions for summary

judgment by arguing that neither Deutsche Bank nor Real Time has

proven entitlement to enforce their notes and mortgages, this

court rejects Williams's argument.  This court rejected that

argument earlier, and Williams may not now relitigate it.  See

Order Granting in Part and Denying in Part Motion for Summary

Judgment (Docket No. 62 ) at 12-13, ECF No. 78.  This court has

already ruled that Deutsche Bank and Real Time are allowed to

seek summary judgment on the affirmative claims asserted against

them by Williams without first proving that they are the holders

of the relevant notes and mortgages.

        Plaintiffs are confused about the doctrine of legal

standing.  Plaintiffs believe that, because Deutsche Bank and

Real Time have not proven that they have standing to enforce the

loan documents, they lack standing to seek summary judgment on

the affirmative claims asserted against them.  Had Deutsche Bank

or Real Time filed affirmative claims to enforce the notes and

mortgages, they would have had to establish their legal right to

enforce those documents.  However, Williams has sued Deutsche

Bank and Real Time, and the banks are merely seeking a

12

determination that they are not liable to Williams for the claims Williams asserts against them. The banks need not establish that they are the legal owners of Williams's loans before they defend against Williams's claims. "Standing" is a plaintiff's requirement, and Williams misconstrues the concept in arguing that Defendants must establish "standing" to defend themselves.

B.  Summary Judgment is Granted in Favor of Real Time on the TILA Claim Asserted in Count 15.

Real Time has moved for Summary Judgment on the TILA claim asserted in Count 15, arguing that it is barred by the applicable statute of limitation set forth in 15 U.S.C. § 1635(a). Under that section, a borrower has a right to rescind a consumer credit transaction that provides for a security interest in any property used as the borrower's principal dwelling "until midnight of the third business day following consummation of the transaction or the delivery of the information and rescission forms." Id. However, when a lender fails to disclose to a borrower his or her right to rescind, or fails to provide material disclosures, the duration of the borrower's right to rescind extends for three years from the date the transaction was consummated. 12 C.F.R. § 226.23(a)(3); Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989). Williams does not dispute having received the applicable notices or receipt of all "material disclosures." Given this court's earlier ruling, Williams concedes that her TILA claim is barred

13

by the three-day limitation period.  Accordingly, summary
judgment is granted in favor of Real Time on the TILA claim
asserted in Count 15.

> C.  Summary Judgment is Granted in Favor of Deutsche
> Bank and Real Time on the Unfair and Deceptive Act
> Claims Asserted in Counts 12 and 14.

This court has previously ruled:

> Counts 12 and 14 are asserted against
> Deutsche Bank and Real Time, respectively,
> for violations of Hawaii's Unfair and
> Deceptive Practices Act by Rickard and Home
> 123.  Section 480-2 of the Hawaii Revised
> Statutes prohibits "[u]nfair methods of
> competition and unfair or deceptive acts or
> practices in the conduct of any trade or
> commerce."
>
> . . . . [C]ounts 12 and 14 of the First
> Amended Complaint do not seek civil penalties
> from Deutsche Bank or Real Time and instead
> seek only rescission of the 2006 notes and
> mortgages.  Williams's Opposition indicates
> that her rescission claims are based on
> section 480-12 of the Hawaii Revised
> Statutes, which states: "Any contract or
> agreement in violation of this chapter is
> void and is not enforceable at law or in
> equity."

See Order Granting in Part and Denying in Part Motion for Summary
Judgment (Docket No. 62 ) at 12-13, ECF No. 78.

Deutsche Bank and Real Time argue that, even if a
violation of chapter 480 occurred (which they dispute), they are
entitled to summary judgment on the chapter 480 claims because
Williams cannot unwind the transactions by tendering the loan
proceeds back to them.  This court agrees.  See Beazie v.

Amerifund Fin., Inc., 2011 WL 1437888, *9-*11 (D. Haw. Apr. 14, 2011) (granting summary judgment in favor of a lender on a section 480-12 claim to void a mortgage loan transaction because the plaintiff was unable to place the parties back in their original premortgage positions, meaning that the court could not grant relief to the plaintiff under section 480-12).

Relying on Hawaii Supreme Court rulings recognizing that parties should not receive a windfall when obtaining relief under chapter 480 of the Hawaii Revised Statutes, Beazie ruled that, when a plaintiff seeks to void a mortgage loan transaction under section 480-12 of the Hawaii Revised Statutes, the plaintiff cannot keep possession of the loan proceeds and have the mortgage and note declared void and unenforceable. Otherwise, the plaintiff would reap a windfall at the lender's expense. Beazie therefore ruled that, when voiding a transaction under section 480-12, the court must place the parties in the positions they held prior to the transaction. Beazie granted summary judgment in favor of the lender on the consumer's section 480-12 claim to void a mortgage loan transaction because the plaintiff could not sufficiently unwind the transaction to avoid a windfall. Id.

This court previously ordered Williams to file a "detailed declaration" no later than February 28, 2011, explaining how she proposes to unwind the transactions so that

she will not be unjustly enriched.  It was the court's intention that Williams explain how she intends to unwind the transactions, and that Deutsche Bank and Real Time have an opportunity to conduct discovery with respect to any proposal.  Any further summary judgment motions could then refer to this detailed record.

On February 28, 2011, Williams submitted her own declaration, describing her proposal for unwinding only the first mortgage loan.  The declaration did not make a proposal to unwind the second mortgage loan and failed to provide "a sufficient level of detail" for unwinding the first mortgage loan.  Williams merely proposed that Deutsche Bank give her a new loan at 2% to 3% per year interest, with a principal amount equal to what Deutsche Bank paid to obtain the note and mortgage.  Williams says that she is willing and able to pay "up to $1,000 per month for this new mortgage."   Williams's Decl. ¶¶ 9-10, ECF No 82-1.  This was essentially the same proposal she discussed in her deposition, making further discovery unnecessary.

Williams's declaration does not sufficiently describe how she proposes to unwind the transaction.  Williams previously testified in her deposition that she lacks the ability to repay the principal amount of the first mortgage.  <u>See</u> Williams Depo. at 117-118, Dec. 3, 2010, ECF No. 98-4.  Williams testified that she has not paid money due on the mortgage or real estate taxes

since mid-2008.  See id. at 128.  Williams says that the only
income earned by her and her husband comes from her husband's
canoe repair business.  She testified that, in a good month, his
business earns $3,000, but that his business is up-and-down and
three or four months may pass with no income.  See id. at 17-18.
Williams testified in her deposition that, if the lenders were
willing to modify the loan, she could afford to pay $1,000 per
month.  Id. at 115-16.  When pressed as to how she would pay
$1,000 per month, Williams said that she did not know, but that
she would find a way.  Id. at 116.  Williams testified that she
owes $250,000 for medical debts, in addition to what is owed on
the first and second mortgage loans.  See id. at 75-76.  Under
these circumstances, a bald statement that Williams is willing
and able to pay $1,000 per month is insufficient to describe how
the loans can be unwound.

        Williams provides no authority for the proposition that
a loan modification is an appropriate substitute for unwinding
the loan.  Even if the court accepts that proposition and then
considers Williams's husband's declaration, the Williamses do not
propose a viable new loan.  Williams's husband says that, in the
month before he submitted his declaration, his business began to
pick up.  Although the business sometimes went for three or four
months with no income, based on the one month, Williams's husband
thinks that the business can earn between $3,000 and $4,000 per

month.  As discussed above, it is unclear whether this $3,000 to
$4,000 monthly figure is pre- or post-tax.  Even assuming that
the Williamses will "take home" $4,000 per month from the
business, the new proposed loan involving $1,000 monthly payments
is unworkable, as the Williamses would be nearly $200 per month
over their proposed budget if real property taxes and hazard
insurance were taken into account.  Notably, the Williamses'
proposal does not factor in paying off approximately $250,000 in
medical expenses that they owe.  Even viewing the facts in the
light most favorable to Williams (that Williams only needs to
repay $274,249.39 over 30 years at 2% interest, and that the
Williamses' would "take home" approximately $4,000 per month from
their business), the proposed loan modification is unworkable.
Based on the undisputed evidence detailed above, the Williamses
are unable to unwind the loan transactions through a viable new
loan.

Williams's only assertion relevant to the above
discussion is that her principal should be reduced to what
Deutsche Bank paid Home 123 for the first mortgage loan and what
Real Time paid MERS for the second mortgage loan.  That is, she
disputes that she owes the principal loan amounts she received
minus all amounts (including principal, interest, and fees) she
paid.  Williams's proposal might result in an undeserved windfall
to Williams if the banks did not pay full face value for the

loans.  In attempting to unwind the loans, the court strives to put Williams in the position that she would have been in had she not been allegedly "tricked" into the loans.  A bank that pays a discounted amount for a loan is assuming a risk that a borrower might default on the loan.  Williams, who would be taking no such risk, should not benefit from the bank's assumption of the risk. The court is unpersuaded by Williams's argument in this regard, which, in any event, is presented by Williams without any supporting authority or evidence that Deutsche Bank and/or Real Time paid less than face value for the loans.  The court stresses that it is not here ruling that, to unwind a loan for purposes of chapter 480 of the Hawaii Revised Statutes, a borrower need only tender the principal amount of a loan minus all amounts the borrower paid.  Instead, the court is ruling that, even if Williams only needed to tender the principal amounts of loans minus all amounts she had paid, she does not raise a genuine issue of fact as to her ability to repay that amount.  For the reasons set forth in <u>Beazie v. Amerifund Fin., Inc.</u>, 2011 WL 1437888, *9-*11 (D. Haw. Apr. 14, 2011), the court grants summary judgment in favor of Deutsche Bank and Real Time on the chapter 480 claims for rescission because Williams cannot unwind the transaction.

Because the court grants summary judgment in favor of Deutsche Bank and Real Time on the chapter 480 rescission claims

19

based on Williams's inability to unwind the transaction, the court need not reach the other arguments made by the banks. Nevertheless, to the extent Deutsche Bank and Real Time argue that they are entitled to summary judgment because Williams did not act as a reasonable consumer when she was allegedly misled into the loan transactions through the "bait and switch," the court questions whether there is an absence of questions of fact. Even assuming that a chapter 480 claim for rescission required Williams to have acted reasonably, a question of fact might exist as to whether she acted reasonably in failing to read the loan documents before signing them. Although the banks argue that Williams had a duty to read the documents before signing them, Williams claims to have been duped into signing them. Williams testified that she signed the loan documents, taking Rickard's word that she was signing for a $70,000 loan only. <u>See</u> Williams's Depo. at 58, 68. Under these circumstances, a question of fact may exist as to whether Williams acted reasonably when she failed to read the documents.

Real Time additionally argues that it should be granted summary judgment on the chapter 480 claim against it because Williams received the $70,000 loan she requested. Real Time contends that any unfair or deceptive act by Rickard/Home 123 involved the first mortgage loan that Williams says she did not want. Because Williams wanted and received a second mortgage

loan of $70,000, Real Time says no violation of chapter 480 occurred such that the second mortgage loan should be voided. Because the court grants summary judgment in favor of the banks on the chapter 480 claims based on Williams's inability to unwind the loans, the court also need not determine whether the underlying loans, for purposes of determining whether the second mortgage loan is void, should be viewed as having involved a unitary course of conduct under the circumstances alleged or two separate loans.

D.    The "Title Accounting" Claim Asserted Against MERS in Count 16 Has Been Dismissed.

Count 16 of the First Amended Complaint seeks a "Title Accounting" from MERS.  See First Amended Complaint ¶ 434.  MERS sought summary judgment on the "Title Accounting" claim (whatever that vague claim may be), arguing that it has assigned Williams's second mortgage to Real Time, as demonstrated by the State of Hawaii, Bureau of Conveyances, Document Number 2010-033392.  See ECF No. 99-7 (copy of the recorded March 11, 2010, assignment of Williams's second mortgage from MERS to Real Time).  At the hearing on the motions, Williams voluntarily dismissed Count 16, making the summary judgment motion moot as to MERS.  Because Count 16 is the only claim asserted against MERS, the dismissal of Count 16 dismisses MERS from this action.

### E. Williams is Not Entitled to Summary Judgment at This Time.

In her March 22, 2011, motion for summary judgment, Williams argues that there is no genuine issue of fact that Rickard committed a "bait and switch." Williams contends that, because she is the only person who can submit an affidavit or declaration about the loan closing process, the court must accept her word as to what happened. This court disagrees.

With respect to Deutsche Bank and Real Time, the motion is moot because they have prevailed or are prevailing on all the claims asserted against them.[1] With respect to Rickard and Home 123, the motion is fundamentally unfair. Default has not been entered against Home 123 or Rickard. It does not appear from the certificate of service for the motion that either Home 123 or Rickard was served with the motion. Under these circumstances, it would be unfair and premature to rule as a matter of law that Rickard committed a "bait and switch" for which Rickard and Home 123 may be liable, especially when Rickard may well dispute Williams's claim that Rickard committed the "bait and switch" and

---

[1] To the extent Williams is now arguing that Deutsche Bank and Real Time are named as Defendants in the counts specifically labeled as being asserted against Rickard or Home 123, Williams's argument is invalid. This court has previously ruled that Deutsche Bank and Real Time are only named as Defendants in Counts 12 through 15 of the First Amended Complaint. Williams has not timely sought reconsideration of that ruling and is barred from changing her theories of liability at this late juncture.

could submit a declaration to that effect.  Williams's motion is therefore denied without prejudice to its refiling at a later date, assuming that Williams gets leave to file such a motion.  <u>See</u> Amended Rule 16 Scheduling Order, Mar. 30, 2011, ECF No. 110 (noting that the time to file dispositive motions is closed).

At the hearing on the motions, Williams asked the court to continue her motion, rather than deny it, to allow Rickard time to oppose the motion.  In light of the court's remand of the case to state court as set forth below, the court denies the motion without prejudice to its refiling if the state court allows such a motion to be filed.

F.    The Remaining State Law Claims Against Rickard and Home 123 Are Remanded to State Court.

At the hearing on the motions, Williams agreed that, for the same reasons that the banks were entitled to summary judgment on the TILA claims asserted against the banks, Rickard and Home 123 are entitled to summary judgment on the TILA claims asserted against them.  Williams stated that, because the TILA claims are no longer being adjudicated against any Defendant, only state law claims remain.  The court now declines to exercise supplemental jurisdiction over these claims.

This case was removed to this court based on federal question jurisdiction.  <u>See</u> Notice of Removal of Action to Federal Court Based on Federal Question Jurisdiction, Nov. 6, 2009, ECF No. 1.  Because the federal claims are no longer at

issue, and because no other basis for original jurisdiction exists, the court must decide whether to exercise supplemental jurisdiction over the remaining state law claims against Rickard and Home 123. When the federal claims are dismissed before trial, it is within the court's discretion to exercise jurisdiction over the remaining state claims. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). However, needless "decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a sure-footed reading of applicable law." Id. at 726. Although the Supreme Court has stated that dismissal or remand is not mandatory, it has also recognized that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

The only claims remaining in this action concern alleged state law violations by Rickard and Home 123. The court declines to exercise supplemental jurisdiction over those remaining claims and remands this case to state court. See Calsbad Tech., Inc. v. HIF Bio, Inc., 129 S. Ct. 1862, 1865 (2009) (noting that it is proper for a district court to remand a

properly removed case to state court after declining to exercise supplemental jurisdiction over the state law claims); <u>Cohill</u>, 484 U.S. at 351 (a district court has discretion to remand a case to best accommodate the values of economy, convenience, fairness, and comity).

V.        <u>CONCLUSION.</u>

For the reasons stated above, the court denies Williams's motion for summary judgment and grants the summary judgment motions filed by Deutsche Bank and Real Time.  Because Williams has dismissed her claim against MERS, the court need not rule on MERS's request for summary judgment and it is denied as moot.  Based on Williams's concession at the hearing that her TILA claims against Rickard and Home 123 are not viable, the court also grants summary judgment against Williams on those claims.

As Williams admitted at the hearing, the only claims remaining in this action are asserted under state law against Rickard and Home 123.  The court declines to exercise supplemental jurisdiction over those claims and remands them to state court.  Pursuant to 28 U.S.C. § 1447, the Clerk of Court is directed to send a certified copy of this order to the Clerk of the First Circuit Court, State of Hawaii.  The Clerk of Court is additionally directed to enter judgment consistent with this

order and the orders filed on June 30, 2009, and February 9, 2011, in this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 25, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Williams v. Rickard, et al., Civil No. 09-00535 SOM/KSC; ORDER GRANTING DEUTSCHE BANK NATIONAL TRUST COMPANY'S MOTION FOR SUMMARY JUDGMENT ON COUNT 12 (ECF NO. 90); ORDER GRANTING REAL TIME RESOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT ON COUNTS 14 AND 15 (ECF NO. 96); ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 93); ORDER REMANDING STATE LAW CLAIMS AGAINST DAWN RICKARD AND HOME 123 CORPORATION TO STATE COURT